4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES, Plaintiff/Appellee,
v.
Mark F. NASH, Defendant/Appellant.
 No. 93-1410.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 4, 1993.
Decided Aug. 17, 1993.
 
 Before FLAUM, EASTERBROOK and ROVNER, Circuit Judges.
 ORDER
 A jury found Mark Nash guilty of conspiracy to distribute cocaine, in violation of 21 U.S.C. Sec. 846, and money laundering, in violation of 18 U.S.C. Sec. 1956(a)(1)(B)(i). He received a 168-month sentence. Nash appeals his sentence, arguing that the two-point enhancement for obstruction of justice was improper.[1]
 
 I.
 
 1
 Mark Nash's conviction comes after a second jury trial; the first trial, on the charge of money laundering, resulted in a hung jury. Nash was then charged by a superseding indictment and subsequently convicted for conspiracy to distribute cocaine and money laundering. 21 U.S.C. Sec. 846; 18 U.S.C. Sec. 1956(a)(1)(B)(i).
 
 
 2
 The evidence adduced at trial revealed that Nash had been distributing cocaine since the early part of 1986. R. 41, at 150. Charles McMahan, who referred to Nash as "Mark" throughout the proceedings, testified that between 1986 and 1988 he obtained approximately 200 ounces of cocaine from Nash. Nash would "front" the cocaine to McMahan, and McMahan would pay Nash after he found a buyer. McMahan's transactions with Nash were corroborated by an undercover tape played at the trial in which McMahan explained to one of his cocaine customers that he owed "Mark" $2150 which he could pay after receiving $2200 from other individuals. Appellee's Brief, App. at 5; R. 42 at 5. Chester Keeling, a rebuttal witness for the government, testified that he began purchasing cocaine in the form of "eight-balls" (one-eighth of an ounce of cocaine) from Nash in 1987. R. 42, at 109. Nash would "front" the cocaine to Keeling and Keeling would pay Nash (approximately $250 per eight-ball) when he had the money. He continued to receive cocaine from Nash through the summer of 1988.
 
 
 3
 Brad Maloney testified at length about Nash's investment in his nightclub Traditionz as a 28 percent owner. According to Maloney, Nash initially invested $28,000. R. 41, at 25, 55. Two weeks later he gave Maloney another $5000 as a loan. R. 41, at 37-38. Nash later bought out someone else's share in the club for $2500. R. 41, 38-39. A ledger book produced at trial revealed recorded receipts of cash from Nash. R. 41, at 53-59. Maloney also testified that Nash had requested that his name be removed from the partnership papers because the money he had invested was "drug money", R. 41, at 34, and Nash thought he might be arrested soon. R. 41, at 33. Nash then told Maloney that he wanted a secret document verifying his investment. R. 41, at 34-35, 39-41. The notarized agreement concerning Nash's interest in the club was produced at trial. R. 41, at 42.
 
 
 4
 Nash testified in his own defense. He denied any involvement in distributing cocaine. R. 42, at 89, 94-95, 115-16. He also testified that he had invested only $800 in Traditionz. R. 42, at 76, 80-81, 89, 102.
 
 II.
 
 5
 The Sentencing Guidelines require the court to increase the offense level of a sentence by two levels "if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing." U.S.S.G. Sec. 3C1.1. The commentary to section 3C1.1 lists "committing, suborning, or attempting to suborn perjury" as an example of the type of conduct to which the enhancement for obstruction of justice applies. U.S.S.G. Sec. 3C1.1, App. Note 3(b).
 
 
 6
 A finding of perjury, for purposes of the enhancement for obstruction of justice, must comport with the definition of perjury as stated in the federal criminal perjury statute. United States v. Dunnigan, 113 S.Ct. 1111 (1993); see 18 U.S.C. Sec. 1621.[2] The Supreme Court specified in Dunnigan that "[a] witness testifying under oath or affirmation violates [the perjury] statute if [he] gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Dunnigan (citing Sec. 1621(a)), see United States v. Emenogha, Nos. 91-2577, 91-2832, 91-2833, 1993 WL 255951, at * 7, 1993 U.S.App. LEXIS 17411, at * 25 (7th Cir. Jul. 12, 1993); United States v. Rodriguez, 995 F.2d 776, 779 (7th Cir. June 10, 1993).
 
 
 7
 Upon a defendant's objection to a sentence enhancement resulting from his trial testimony, the district court is required to review the evidence and to make independent findings necessary to establish a willful impediment to or obstruction of justice under the definition of perjury.[3] The court's determinations regarding enhancements based on perjury are factual in nature, and the appellate court reviews them for clear error. Rodriguez, 995 F.2d at 779 (citing United States v. Doubet, 969 F.2d 341, 348 (7th Cir.1992)); see Emenogha, 1993 WL at * 7, 1993 U.S.App. LEXIS, at * 24 (citing United States v. Price, 988 F.2d 712 (7th Cir.1993)).
 
 
 8
 Nash argues that the district court did not make an independent finding that he had committed perjury. He asserts that the district court's "so-called independent finding" was based on the jury's verdict of guilty and did not constitute a specific finding of untruthfulness. Appellant's Brief at 19-20.
 
 
 9
 The district court began its discussion of obstruction of justice with the observation that the jury must have found that Nash had lied on the stand because his testimony directly contradicted the government's evidence; the court reasoned that the jury could not have found that the government had proven its case beyond a reasonable doubt in the absence of a belief that Nash had lied. Sent. Tr. at 12-13. However, the court specifically recognized that it could not enhance Nash's sentence merely because he testified and was found guilty, Sent. Tr. at 13-14, and clearly stated that it was making an independent finding that Nash had committed perjury:
 
 
 10
 [T]he court does make an independent finding that the defendant did commit perjury during the course of the trial. The testimony specifically that I'm referring to was testimony that he had never distributed cocaine, that he had never laundered money through the establishment called Traditionz.... There is a specific and direct conflict in testimony between what he says happened and what the Government witnesses say happen. I believe that he did lie when he said he had never distributed cocaine. I believe that he did commit perjury when he testified that he had not laundered money through that club.
 
 
 11
 Id. The record supports the court's finding. Despite the overwhelming evidence that Nash had been engaged in drug trafficking and attempted to secretly invest substantial sums of money in Traditionz, Nash testified that he never gave cocaine to McMahan or Keeling and never invested more than $800 in Traditionz.
 
 
 12
 Nash's direct testimony that he was not involved in distribution of cocaine or money laundering was material. United States v. Garcia, 994 F.2d 1499 (10th Cir.1993) (denial of involvement in conspiracy is false testimony of material matter); Emenogha, 1993 WL at * 7, 1993 U.S.App. LEXIS, at * 25 (judge's finding that defendant was "untruthful" and "utterly incredible" when he testified to affirmative defense was sufficient finding of a willful lack of truthfulness regarding a material matter). The court specifically found that Nash committed perjury regarding a material matter and correctly imposed a sentence enhancement for obstruction of justice.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Nash also raised a claim of ineffective assistance of trial counsel in his brief on appeal. At oral argument he elected to withdraw his claim of ineffective assistance. We granted him leave to withdraw the claim without prejudice
 
 
 [2]
 Prior to Dunnigan, this court required narrower factual findings to support an obstruction of justice enhancement based on perjury. United States v. Rodriguez, 995 F.2d 776, 778 (7th Cir. June 10, 1993)
 
 
 [3]
 Although it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding, a finding of an obstruction or impediment of justice is sufficient if it encompasses all of the factual predicates for a finding of perjury. Dunnigan, 113 S.Ct. at 1117